617 P.2d 69

Rebecca **LEWIS**, personal representative of the Estate of Helen Jans, deceased, Plaintiff–Appellant,

v.

Alvin L. **SWENSON**, M. D., and John H. Seidel, Defendants–Appellees.

No. 1 CA–CIV 4586.

Court of Appeals of Arizona, Division 1, Department B.

June 3, 1980.

Rehearing Denied July 24, 1980.

Review Denied Sept. 11, 1980.

---

Norman Herring, Phoenix, for plaintiff—appellant.

Snell & Wilmer by John J. Bouma, Kenneth D. Nyman, Phoenix, for defendant—appellee Swenson.

Monbleau, Vermeire & Turley by Albert R. Vermeire, Phoenix, for defendant—appellee Seidel.

## OPINION

O'CONNOR, Judge.

The issues involved in this appeal are whether a cause of action may be maintained by a party to a lawsuit (1) against an attorney for the adverse party for negligently failing to instruct a witness to avoid disclosing prejudicial information to the jury in response to the attorney's questions, and (2) against a witness for intentionally or recklessly disclosing prejudicial information to the jury in a non—responsive answer to an attorney's question. We find that no such causes of action may be maintained under the circumstances of this case.

Helen Jans, now deceased, was the plaintiff in a medical malpractice action against M. L. Goldsmith, M.D. During the course of the jury trial, appellee, Alvin L. Swen-

son, M.D., was called by appellee, John H. Seidel, the defendant's attorney, as an expert witness for the defense. In response to a question by appellee Seidel on direct examination, appellee Swenson testified, in substance, that he had stopped performing surgery several years previously because of the high cost of medical malpractice insurance premiums although he remained physically and mentally competent to practice surgery. The plaintiff's attorney promptly moved for a mistrial which was granted. Thereafter, Helen Jans died and appellant, Rebecca Lewis, was appointed as the personal representative of her estate.

This action was filed by the personal representative to recover as damages the amount spent in preparation for the medical malpractice trial, and for trial, and for the amount of damages Helen Jans had claimed against Dr. Goldsmith. Appellant's complaint alleged that appellee Seidel owed an affirmative duty to Helen Jans and to the court to prevent his expert witness from mentioning high premiums for malpractice insurance in the presence of the jury. The complaint also alleged that appellee Swenson was an experienced expert witness, who knew that mention of high premiums for malpractice insurance would prejudice the plaintiff's case, and that he had a duty to refrain from mentioning it. Appellant alleged that the breach by appellees of the duty was a willful and intentional attempt to interfere with the judicial process and was a violation of Helen Jans' civil and constitutional right to a fair trial. Appellees filed motions to dismiss the complaint for failure to state a claim upon which relief could be granted. The trial court granted the motions and entered a judgment for appellees. Appellant moved to set aside the judgment and to amend the complaint. Appellant's motions were denied and she appeals from the order and judgment dismissing the complaint and from the order denying leave to amend the complaint.

Appellant cites article 2, § 23 of the Arizona Constitution which provides that "[t]he right of trial by jury shall remain inviolate." Appellant also cites article 18, § 6 which provides that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Appellant contends that appellees have violated Helen Jans' rights under the cited sections giving rise to a cause of action on behalf of her estate. Appellant admits she can cite no case as authority for her position and we have found none.

Article 18, § 6 of the Arizona Constitution has been applied to restrain legislative restrictions or limitations of recognized causes of action. It has not been applied to mandate creation of a new civil cause of action for damages where none existed previously. *See, e. g., Industrial Commission v. Frohmiller*, 60 Ariz. 464, 140 P.2d 219 (1943); *Rail N Ranch Corp. v. State*, 7 Ariz. App. 558, 441 P.2d 786 (1968); *Harrington v. Flanders*, 2 Ariz.App. 265, 407 P.2d 946 (1965). In our opinion neither article 18, § 6 nor article 2, § 23 of the Arizona Constitution furnishes the basis for a civil cause of action for damages by an adverse party against attorneys or witnesses whose actions during the course of a jury trial result in a judicial declaration of mistrial.

As stated in W. Prosser, *Law of Torts* § 1, at 4 (4th ed. 1971):

There are many interferences with the plaintiff's interests . . . for which the law will give no remedy, although the defendant has been clearly at fault.

The Arizona court observed in *Fickett v. Superior Court of Pima County*, 27 Ariz. App. 793, 794–95, 558 P.2d 988, 989–90 (1976), that:

The general rule for many years has been that an attorney could not be liable to one other than his client in an action arising out of his professional duties, in the absence of fraud or collusion. 7 Am. Jur.2d, Attorneys at Law, § 167. . .

\* \* \* \* \* \*

[But w]e are of the opinion that the better view is that the determination of whether, in a specific case, the attorney

will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injuries suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. [citations omitted]

Other jurisdictions applying a similar balancing test have held that:

> An attorney may be liable for damage caused by his negligence to a person *intended to be benefited by his performance* irrespective of any lack of privity of contract between the attorney and the party to be benefited. [citations omitted] The liability sounds in tort.

*Norton v. Hines,* 49 Cal.App.3d 917, 921, 123 Cal.Rptr. 237, 240 (1975) (emphasis supplied). *See also Weaver v. Superior Court, County of Orange,* 95 Cal.App.3d 166, 156 Cal.Rptr. 745 (1979); *Donald v. Garry,* 19 Cal.App.3d 769, 97 Cal.Rptr. 191 (1971); *Berlin v. Nathan,* 64 Ill.App.3d 940, 381 N.E.2d 1367 (1978).

However, as the court also stated in *Norton v. Hines,* 49 Cal.App.3d at 921, 123 Cal.Rptr. at 240:

> Clearly, an adverse party is not an intended beneficiary of the adverse counsel's client. If a cause of action exists against attorneys . . . , it must be pleaded as an action for malicious prosecution. We see no reason to extend applicable law now found in cases involving attorneys and third parties when there is sound and recognized public policy for limiting the cause of action to malicious prosecution.

In applying the *Norton* holding, the California Court of Appeals in *Weaver v. Superior Court, County of Orange,* 95 Cal.App.3d at 179, 156 Cal.Rptr. at 751–52 stated:

> California courts, in refusing to impose a duty of care owed by an attorney to an adverse third party, have recognized that

"the burden of imposing liability upon a defendant" attorney outweighs "the consequences to the community if liability . . . is withheld." [Citation omitted] In reaching this result, the decisions acknowledge that to impose such a duty would place an attorney in a position where his own interests would conflict directly with his client's interests. Accordingly, so the rationale runs, a person's right to effective assistance of counsel would be denigrated, simultaneously impairing that person's right of free access to the courts.

Similar reasons of public policy have caused courts to declare that there is an absolute privilege of attorneys and witnesses to state anything at trial which relates to the matter at issue. Thus, in *Lyddon v. Shaw,* 56 Ill.App.3d 815, 822, 372 N.E.2d 685, 690 (1978), the court observed:

> [There is an] "obvious public interest" in affording every citizen "the utmost freedom of access to the courts" [which has] inspired the rule in the law of defamation that anything said by litigants or counsel relating to the matter at issue is privileged, even though this privilege acts to deprive parties, in most cases, of any civil remedy for defamatory statements made in the course of such judicial proceedings.

The comment to *Restatement (Second) of Torts* § 584, at 243, explains the reasons behind the "absolute privileges" in the law of defamation as:

> based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position. Therefore, the privilege, or immunity, is abso-

lute and the protection that it affords is complete. It is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor.

Section 588 of the *Restatement* extends the same privilege to witnesses at trials. Comment a to § 588 notes that:

it is necessary . . . that a full disclosure not be hampered by fear of private suits for defamation . . . . The witness is subject to the control of the trial judge in the exercise of the privilege. For abuse of it, he may be subject to criminal prosecution for perjury and to punishment for contempt.

For the same reasons of public policy which dictate granting an absolute privilege to witnesses and attorneys from suits for defamation for statements made in the course of trial, we believe there is a privilege to attorneys at trial to ask questions of witnesses which have a relation to the proceedings without fear of subjecting themselves to a civil action for damages by an opposing litigant if the answer to the question ultimately results in a mistrial. If the question asked is improper or irrelevant, the opposing litigant may object to the question. If the question is proper and no objection to it is made, the answer to it cannot give rise to a cause of action by the opposing litigant against the attorney, irrespective of his motive in asking the question. To hold otherwise would have a chilling effect on the ability of counsel to vigorously represent the client.

A witness called to testify at trial is also privileged, in our opinion, to answer the questions asked without fear of civil liability in damages to the litigants for any mistrial which may result from the answer, whether it is responsive to the question or not, and regardless of the witness' motives in answering. If the answer is untruthful, the witness may be subject to criminal liability for perjury or to punishment for contempt. If the witness intentionally responds to a question in a manner which the witness knows may result in a mistrial and which is not directly responsive to the ques-

tion, the witness may be subject to punishment for contempt. The court's inherent power to manage its affairs necessarily includes authority to impose appropriate sanctions on those appearing before it. *Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); *Mountain States Implement Co. v. Sharp*, 94 Idaho 225, 486 P.2d 80 (1971).

Appellant seeks to impose a duty on defense counsel owing to the plaintiff to prevent his expert witness from mentioning the high cost of premiums for medical malpractice insurance. Appellant relies on statements in various opinions to the effect that counsel have a duty to advise their clients not to tell the jury the defendant in a negligence case has insurance. *See Meuhlebach v. Mercer Mortuary and Chapel, Inc.*, 93 Ariz. 60, 378 P.2d 741 (1963); *Northern Arizona Supply Co. v. Stinson*, 73 Ariz. 109, 238 P.2d 937 (1951); *Ernest Yeager & Sons, Inc. v. Howell*, 234 So.2d 899 (Miss.1970). In this instance, however, we are not dealing with disclosure to the jury of the existence of liability insurance for the defendant in the first trial. Appellee Swenson was called by the defense as an expert witness. He was asked on direct examination for his training and experience in order to qualify him as an expert in the field of surgery. The response to which appellant objected indicated the witness had stopped performing surgery some years previously because of the high cost of his malpractice insurance. Such information is relevant to establish the qualifications of the witness to testify as an expert and to explain why he is no longer performing surgery. Not every reference to insurance or to the high cost of insurance premiums constitutes grounds for a mistrial. *Muehlebach v. Mercer Mortuary and Chapel, Inc.*, 93 Ariz. at 65, 378 P.2d at 744. In *Little v. Superior Court of Orange County*, 55 Cal.2d 642, 645, 361 P.2d 13, 15, 12 Cal.Rptr. 481, 483 (1961), the court stated:

Although the courts have condemned the action of an attorney who intentionally brings the fact of insurance before a jury,

the condemnation does not extend to cases where the information is disclosed incidentally during an attempt to prove other facts or where the record does not show that the particular answer was sought or anticipated.

It is naive to suppose that jurors are unaware that physicians and surgeons usually are covered by medical malpractice insurance and that the cost of premiums has been escalating. *See* W. Prosser, *supra* § 83, at 549. No issue is raised in this appeal concerning the propriety of the trial court's order granting appellant's motion for mistrial and we do not decide the issue. However, we believe the allegation in appellant's complaint is erroneous on its face in stating that "the innuendo contained in [appellee Swenson's] testimony was to the effect that patients were deprived of the benefit of his skill, experience and ability because verdicts in medical malpractice cases had resulted in outrageous premiums for malpractice insurance."

Even assuming the appellees had a duty to see to it that medical malpractice insurance was not mentioned to the jury, the duty is owed to the court, and not to the adverse party. The breach of the duty owed to the court would not give rise to a cause of action in tort by the adverse party against the appellees.

> [T]here is no cause of action where no existing right has been violated, and thus merely compelling another to avail himself of his legal remedy by undertaking or carrying on litigation is not such conduct as constitutes a tort.

86 C.J.S. *Torts* § 45 (footnotes omitted). *See also Martin v. Martin*, 118 Ga.App. 192, 163 S.E.2d 254 (1968).

■ Appellant also cites *Restatement (First) of Torts* §§ 870 and 871 as a basis for her cause of action. Both of the sections have been reworded in the *Restatement (Second) of Torts*. Section 870 now provides:

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the

circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.

Section 871 now provides:

> One who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances.

New section 871 A provides:

> One who intentionally creates civil or criminal liability against another is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances.

The comments to §§ 870, 871, and 871 A require the defendant's conduct to consist of some type of tortious or culpable act. For the reasons set forth above we do not believe appellees committed a tortious or culpable act in failing to warn the witness or in disclosing to the jury the statement concerning the high cost to witness of medical malpractice insurance. Accordingly, the *Restatement* sections are not applicable.

Finally, appellant argues that the trial court erred in denying her motion to amend the complaint. Upon receipt of a copy of the order granting appellees' motion to dismiss, appellant filed a motion to set aside judgment and a petition for order permitting amendment of the complaint to allege that the answer given by appellee Swenson to the question by appellee Seidel was a "non-responsive" answer. The trial court entered and signed a written judgment in favor of appellees, and denied by minute order the appellant's motion to set aside judgment and petition to amend the complaint. Appellant argues that amendments should be freely allowed and the court abused its discretion in denying the motion to amend. Rule 15(a), Rules of Civil Procedure, expressly states that "Leave to amend shall be freely given when justice requires." Appellant's memorandum in support of her petition to amend the complaint stated as the reason for the amendment that "if the reasons for the court in granting the motion

to dismiss is the claimed privilege of the defendant's testimony, the amendment will make no difference in the ultimate order of judgment in favor of defendants in any event."

It is the rule in both Arizona and in the federal courts that the trial court does not abuse its discretion in refusing to allow an amendment which would not affect the outcome of the litigation and which would add nothing to the status of the law suit. *Wilson v. Byrd*, 79 Ariz. 302, 288 P.2d 1079 (1955); *School District No. 9 v. First National Bank*, 58 Ariz. 86, 118 P.2d 78 (1941); *Home Insurance Co. v. Balfour–Guthrie Insurance Co.*, 13 Ariz.App. 327, 476 P.2d 533 (1970). *See Gilbertson v. City of Fairbanks*, 262 F.2d 734 (9th Cir. 1959); *Stephens v. Reed*, 121 F.2d 696 (3d Cir. 1941). As stated in *Wilson* :

> While the spirit of our rules of pleading is to allow amendments freely in order that justice may be done and the case tried on its merits rather than on niceties of pleading, it would be highly improper and time—consuming to allow amendments that add nothing. If a party in an offer

of proof indicates that his amendment would add nothing, then the motion to amend is properly denied.

79 Ariz. at 306, 288 P.2d at 1082–83.

The proposed amendment of the complaint would not add any additional substantive allegation and would further weaken the stated claim against appellee Seidel. For all of the reasons discussed in affirming the granting of the appellees' motions to dismiss, we believe the amended complaint would fail to state a cause of action against either appellee. Accordingly, we find the trial court properly refused to grant appellant leave to amend.

The judgment and orders of the trial court are affirmed.

EUBANK, P. J., and HAIRE, J., concur.