OPINION OF THE COURT
Rena K. Uviller, J.
Defendant’s motion for summary judgment presents the compelling conflict between a law firm’s obligation to pursue its clients’ interests vigorously, and the restraints imposed upon adversarial zeal by the canons of ethics and the laws of defamation, abuse of process and tortious interference with an adversary’s business. At what point does adversarial vigor exceed the proper bounds of litigation?
The plaintiff in this action is an accountant (hereafter Schulman). He is suing a law firm (hereafter the Firm), one of the Firm’s paralegal employees (hereafter Sprofera) and several of the Firm’s clients. The latter are corporate clients (hereafter OCI), as well as individual corporate principals. Schulman seeks redress for libel, slander, prima facie tort, abuse of process and tortious interference with his accountancy practice. The defendants’ instant motion for summary judgment seeks dismissal of all of Schulman’s causes of action save that for slander.
Schulman’s various complaints stem from the tactics and actions of the Firm in its representation of OCI and the individual clients in an earlier lawsuit (hereafter the Laurel action). A brief description of the Laurel action is *164 essential to understanding Schulman’s grievances against the Firm and the other defendants in this suit.
The Laurel suit was by Laurel Loan Company (hereafter Laurel) against OCI for repayment of a loan. OCI had borrowed money from Laurel under advice from OCI’s accountant, Schulman. When OCI failed without repaying the loan, Laurel sued OCI and the individual clients who had been guarantors of the loan. The Firm, retained to defend OCI and the individual clients in the Laurel action, interposed as a defense and counterclaim to nonpayment that Schulman had an interest in Laurel Loan and had fraudulently induced OCI to borrow money from Laurel so that he, Schulman, could personally profit from the loan.
The Firm asserted that but for Schulman’s inducement, OCI and the individual clients would never have borrowed money from Laurel and that Schulman had never disclosed to them his relationship to Laurel. These defenses and counterclaims were interposed not only against Laurel but against Schulman personally. The Firm added Schulman as a defendant in the Laurel action, charging him with fraud and breach of fiduciary duty. Schulman denied that he had failed to disclose to OCI his interest in Laurel. His motion for summary judgment against the Firm and the individual defendants in the Laurel action was denied.
In pursuit of the counterclaim against Schulman in the Laurel action, the Firm sought compensatory and punitive damages for OCI and the individual clients. To support the punitive damages claim, the Firm sought to show that Schulman’s conduct in negotiating a loan from Laurel without disclosing to OCI his interest in Laurel was not an isolated incident, but was part of a larger scheme to defraud the public. (Walker v Sheldon, 10 NY2d 401.)
In an effort to prove that Schulman had planned to defraud the public at large, the Firm sought and received by court order a list of all Schulman’s accountancy clients who had received loans from Laurel. At the Firm’s direction, Sprofera, the paralegal, telephoned Schulman’s clients on the list to learn of their dealings with Schulman. These telephone calls form the basis of Schulman’s slander action in that he asserts that in the course of these calls *165 Sprofera accused Schulman of dishonesty and of being a “crook”. Depositions of Schulman’s clients to that effect are appended to Schulman’s answer to this motion.
At least one of the persons whom Sprofera telephoned, Theodore Hillebrand, has stated in deposition that Sprofera invited him to join the lawsuit against Schulman but that Hillebrand declined, stating that he had repaid his loan to Laurel and had no interest in suing either Laurel or Schulman.
Getting no better response by telephone from the others on the list, the Firm then wrote each of them a letter. It is this letter written by the Firm to Schulman’s accountancy clients, and especially the third full paragraph of the letter, that forms the basis of Schulman’s suit for libel, abuse of process, malicious interference with business relationships and prima facie tort. Schulman, in his various causes of action, claims that upon receipt of the letter, several of his accountancy clients severed their relationship with him. The letter in its entirety reads as follows:
“This firm is counsel to Optical Concepts, Inc. (‘OCI’) and certain of its former officers and an investor. They are currently in litigation with Laurel. Loan Company, Inc. and Robert E. Schulman. We would appreciate any information you could provide with respect to your dealings with Laurel Loan Company, Inc. and Mr. Schulman.
“OCI engaged Mr. Schulman as its accountant and auditor. Mr. Schulman subsequently became OCI’s financial advisor. During his relation with OCI, Mr. Schulman arranged for repayment of a bank debt to OCI through short-term financing from Laurel Loan Company, Inc. This financing through Laurel Loan Company, Inc. was personally guaranteed by the principals of OCI.
“Mr. Schulman’s wife has been a principal or beneficial owner of shares in Laurel Loan Company, Inc. We maintain that our clients were not informed of this fact at the time the notes were executed. We claim Mr. Schulman used his relationship with OCI to funnel business into Laurel Loan Company, Inc. and that Mr. Schulman and his wife stood to make secret profits from the affiliation with Laurel Loan Company, Inc.
*166 “Counsel for Laurel Loan Company, Inc., Alpert & O’Rourke, 217 Broadway, New York, New York 10007, has provided this firm with a listing of names and addresses of borrowers from Laurel Loan Company, Inc. and guarantors who were also clients of Mr. Schulman. Your company’s name appeared on this list.
“Your assistance would be most helpful to prove our claim that the interrelationship of Mr. Schulman’s clients and Laurel Loan Company, Inc. customers was not an isolated act. In our lawsuit with Laurel Loan Company, Inc. and Mr. Schulman, we have put in a claim for punitive damages. The decision in the case of Walker v Sheldon, 10 NY2d 401, 233 NYS2d 488 (1966), requires OCI to prove, in connection with the punitive damages claim, that the alleged fraud was part of a larger scheme to defraud the public at large.
“We should be pleased to discuss your relationship with Mr. Schulman and Laurel Loan Company, Inc. with you and your attorneys, at a time and place convenient for you.”
I. LIBEL
Schulman’s libel action alleges that the Firm’s letter — and especially the third paragraph alleging Schulman’s improprieties — is false and defamatory; that defendants published the letter to Schulman’s clients with actual malice in order to injure his reputation and business; and that his reputation and business were damaged as a result.
In addition to the defense of truth, defendants contend that even if the letter were false, it is subject to a qualified privilege, and that plaintiff’s failure to make a sufficient showing of actual malice entitles defendants to summary judgment.
Defendants’ claim of privilege raises questions of first impression: Does a privilege apply to an attorney’s out-of-court communications to persons unrelated to litigation as part of the “diligent efforts of counsel to obtain the necessary witnesses for the trial of a pending matter”? If so, what is the nature of the privilege?
For reasons of public policy, certain defamatory communications enjoy an absolute or qualified privilege, so that *167 they fall outside the general rules imposing liability for defamation. (Toker v Pollack, 44 NY2d 211, 218-219; 35 NY Jur, Libel and Slander, § 91.) Absolute privilege confers immunity from liability without regard to motivation. Qualified privilege simply negates the usual presumption of malice that applies to defamatory statements, and shifts the burden to the plaintiff to prove actual malice before liability may be imposed. (Toker v Pollack, supra,, p 219.)
The law has traditionally accorded an absolute privilege to oral or written communications made in the course of judicial proceedings. The complete immunity for such statements is predicated on the public interest in the freedom of participants to “ ‘speak with that free and open mind which the administration of justice demands’ ” (Youmans v Smith, 153 NY 214, 223). Attorneys are thus absolutely immunized for statements made in pleadings and in court. The New York courts have also extended the privilege to a letter from an attorney to subpoenaed witnesses (Youmans v Smith, supra); to letters between attorneys and parties or communications by attorneys to the court during pending proceedings (Simon v Potts, 33 Misc 2d 183); to offers of settlement by attorneys (Zirn v Cullom, 187 Misc 241); and to statements made by an attorney during his examination of records pursuant to an order of discovery (Kraushaar v Lavin, 39 NYS2d 880).
Had the Firm here proceeded to question Schulman’s clients through formal depositions, statements made by attorneys in the course of those depositions may arguably have enjoyed absolute privilege as long as they were relevant to the litigation. Having chosen to obtain information through informal, extrajudicial means, however, defendants are not entitled to this absolute privilege.
In Youmans v Smith (supra), the Court of Appeals held that a letter sent by an attorney to witnesses subpoenaed for a forthcoming disbarment proceeding was protected by the judicial proceeding privilege. The Youmans letter contained a list of questions to subpoenaed witnesses in order to prepare them for future testimony. Thus, defendants’ reliance upon Youmans is ill-founded. The letter here, unlike Youmans, was sent to persons wholly unconnected to the Laurel action in an alleged effort to elicit informa *168 tion and to identify potential witnesses. The letter here is not a part of a judicial proceeding in the sense that the Youmans communication was.
The courts have cautioned that absolute privilege not be enlarged to cover cases where its application is not justified by the policy considerations that engendered the privilege (Stukuls v State of New York, 42 NY2d 272; Andrews v Gardiner, 224 NY 440; see, also, Park Knoll Assoc. v Schmidt, 89 AD2d 164, 168-169). An attorney’s need to conduct preliminary inquiry of those not yet known to possess information germane to litigation, does not require or justify the same unfettered freedom of expression required to plead a claim or argue a case in court. Attorneys should be encouraged to pursue informal methods of discovery, in order both to minimize clients’ costs and to conserve judicial time. Yet this court is mindful of the grave potential for abuse and bad faith in such informal quests for information.
By its very nature, informal discovery such as that used here, reaches many people who ultimately have nothing to contribute to the lawsuit. Because informal mechanisms are relatively inexpensive and not subject to judicial supervision, attorneys are less inhibited in whom they reach and what they say. For those reasons, among others, statements made in the course of informal discovery must be subject to some constraint and ought not be totally immunized from liability. Our free adversary system neither requires nor should it tolerate malicious injury to an adversary under the guise of adversarial zeal. Thus, the absolute privilege protecting statements in the course of judicial proceedings does not apply to lawyers’ informal communications designed to gather information or to identify potential witnesses.
This court finds, however, that attorneys’ statements reasonably related to informal discovery do deserve the more limited protection of qualified privilege. The law confers a qualified privilege on statements “ ‘fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned.’ ” (Toker v Pollack, 44 NY2d 211, 219, supra, citing Lovell Co. v Houghton, 116 *169 NY 520, 526.) Certainly the attorney seeking to. obtain information or to identify witnesses to support his client’s claim is acting in the discharge of a duty. For that reason, statements made in that pursuit are qualifiedly entitled to privilege.
Where a qualified privilege exists, the presumption of malice that applies to unprivileged defamatory statements is lost; the plaintiff, as noted earlier, must prove actual malice in order to establish a cause of action (Toker v Pollack, supra, p 219). On that basis defendants argue that they are entitled to summary judgment because Schulman offers no proof of actual malice and because he sets forth merely conclusory allegations of malice insufficient to sustain his complaint. (Trails West v Wolff, 32 NY2d 207; Shapiro v Health Ins. Plan of Greater N. Y., 7 NY2d 56; Brennan v Granite Equip. Leasing Corp., 60 AD2d 877.) This court does not agree.
As extrinsic evidence of malice, plaintiff offers the affidavit of Hillebrand, attesting that in the Firm’s initial telephone contact with him, Sprofera not only inquired about his relation to Laurel and Schulman but verbally slandered Schulman; that he unlawfully solicited Hillebrand to join the lawsuit against Schulman. As intrinsic evidence of malice, plaintiff offers the letter itself which, he claims, far exceeds the purpose for which the qualified privilege invoked here was designed.
In analyzing the letter itself, it is important to remember that a privilege is qualified in that it offers protection only for statements made in good faith for the purpose for which the privilege is invoked. A qualified privilege may be defeated by proof that the privileged occasion was abused for an improper purpose or that the defendant’s statements exceeded the privilege’s scope. Whether the statement has exceeded the occasion or was made for an improper purpose is for a jury to resolve. (Hill v Durham House Drainage Co., 79 Hun 335; Mencher v Chesley, 193 Misc 829; see, also, 1 Seelman, Law of Libel and Slander in the State of NY [rev ed], p 365.)
Because the privilege here is predicated on the attorneys’ need and duty to gain information and seek witnesses, it may be defeated by proving that the letter went *170 beyond what was required to effectuate those goals. Schulman, with some merit contends that the language of the letter sent by the firm to his clients, did indeed exceed the presumed needs of the occasion.
Had the Firm sought to discover whether Schulman had ever arranged loans for his (Schulman’s) accountancy clients from Laurel Loan and whether or not they also knew of Schulman’s relationship to Laurel, the letter could have been confined to a brief and neutral inquiry. Instead, it included an explicit recounting of OCI’s grievances against Schulman. Thus, Schulman contends, inquiry was not the letter’s true purpose. Rather, the intent was to injure Schulman’s reputation with his clients and to destroy his business; the ultimate goal was to force Schulman to settle the Laurel action against OCI.
“An inference of malicious intent may arise from the writer’s inclusion of expressions beyond such as are necessary for the purpose of the privileged communication” (Mellen v Athens Hotel Co., 153 App Div 891). Unlike Youmans v Smith (153. NY 214, supra), this letter did not contain a series of neutral questions designed to elicit information. It contained an arguably unnecessary and detailed explication of the OCI’s claim against Schulman. Thus, the Firm’s choice of language provides sufficient evidence of improper motivation to warrant a jury’s consideration.
Moreover, even if the Firm and its clients did not intentionally seek to injure Schulman, the letter’s contents may be evidence of a reckless disregard for Schulman’s rights. In the context of libel, the definition of malice goes beyond ill will or hostility. “It may also mean such a wanton and reckless disregard of the rights of another as is ill-will’s equivalent.” (Pecue v West, 233 NY 316, 322.)
This court expressly rejects Schulman’s claim that malice or recklessness may be inferred from the Firm’s recourse to informal discovery through the mail, rather than by formal deposition. On the contrary, informal mechanisms are to be encouraged. But in pursuit of informal discovery, a lawyer is under a special obligation of care. In drafting a letter to Schulman’s clients, the Firm should have been aware of the significant damage such communi *171 cations could do to Schulman’s business. Their failure to take such care and to avoid such damage by more cautious wording is something a jury may consider in determining either malice or recklessness.
An attorney has a duty to represent his or her clients zealously. But an attorney has as compelling an obligation to avoid unnecessary harm to an adversary. The Model Code of Professional Responsibility expressly recognizes this dual obligation: “The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm.” (Model Code of Professional Responsibility, EC 7-10.)
II. OTHER CAUSES OF ACTION
The same evidentiary showing that sustains Schulman’s libel action serves to preclude summary judgment on his claims for abuse of process and prima facie tort.
Regarding abuse of process, Schulman alleges that defendants obtained the list of his clients through a discovery order and then subverted the discovery process for the sole purpose of ruining his reputation and his business.
Abuse of process is defined as the misuse or perversion of regularly issued legal process for a purpose other than that for which the process was created. (Board of Educ. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 397, 400.) Among the elements to be proved are that the person activating the process was motivated to do harm without economic or social justification and that the process was invoked for a collateral advantage outside the legitimate purpose of the process (supra, p 404).
Defendants argue that since they used the list of Schulman’s clients within the mandate of the discovery order (i.e., to learn whether Schulman disclosed to his clients his relation with Laurel), they cannot be guilty of its abuse, even if their ulterior motive was to harass Schulman. That is, defendants claim they are entitled to summary judgment because they disclosed to the court, in seeking and obtaining the discovery order, that they intended to write *172 to Schulman’s clients — a disclosure that Schulman disputes.
In either event, Schulman has offered evidence (the letter itself and Hillebrand’s testimony) for a jury to consider whether the Firm invoked the discovery process and utilized the list not to obtain information from Schulman’s clients, but rather to harm his reputation and damage his business.
As for Schulman’s claim of prima facie tort,, again he must establish that defendants acted with the sole motivation of inflicting harm and without any excuse or justification. (Sommer v Kaufman, 59 AD2d 843, 844.) And again, the choice of language in the letter itself, as well as Hillebrand’s testimony, is evidence of such motive that warrants jury consideration.
Finally, Schulman’s cause of action for interference with business relations is viable only if he demonstrates that unlawful means were used to harm his business. If unlawful means were not used, the interference is actionable only as a prima facie tort, which Schulman has in fact asserted as a separate cause of action. (Sommer v Kaufman, supra, p 843; 32 NY Jur, Interference, § 40.) Schulman offers as proof of unlawful means the solicitation of Hillebrand to join the lawsuit, an offense under section 479 of the Judiciary Law. This solicitation of Hillebrand, while it did not result in harm to the plaintiff, suggests that other clients of Schulman’s may have been solicited with harmful results. These are facts which can only come to light during discovery.
Accordingly, defendants’ motion for summary judgment is denied. Defendants’ motion to strike the notice to take the Firm’s deposition is also denied.