939 P.2d 430

**Shephard LANE, Plaintiff–Appellant,**

v.

**TERRY H. PILLINGER, P.C., an Arizona corporation; Terry Pillinger and Jane Doe Pillinger, husband and wife, Defendants–Appellees.**

No. 1 CA–CV 96–0396.

Court of Appeals of Arizona, Division 1, Department D.

June 10, 1997.

---

5. The conclusive presumption in A.R.S. § 40–285(C) applies only to a sale of property to a purchaser in good faith for value.

Affirmed.

Douglas, Bustamante & Ricker, P.A. by William H. Douglas, Phoenix, for Plaintiff–Appellant.

Fennemore Craig, P.C. by Kenneth J. Sherk and Richard A. Kasper, Phoenix, for Defendants–Appellees.

## OPINION

THOMPSON, Presiding Judge.

Shephard Lane (Lane) appeals from the trial court's grant of summary judgment in favor of Terry Pillinger (Pillinger). Lane filed an action for wrongful institution of civil proceedings against Pillinger for a lawsuit Pillinger filed on behalf of a former client.[1] The trial court concluded that Lane failed to show the previous action terminated in his favor and granted Pillinger's motion for summary judgment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Pillinger is an attorney practicing in Arizona. In 1990, Pillinger represented Gregory Rasko (Rasko) in an underinsured motorist claim against Prestige Casualty Company (Prestige). Prestige ultimately paid Rasko the underinsured policy limits of $15,000 in June of 1992.

In November 1992 Rasko, represented by Pillinger, filed a bad-faith action against Prestige (*Rasko v. Prestige*) for its handling of his underinsured motorist claim. During the pendency of *Rasko v. Prestige*, Rasko filed a second action, again through Pillinger, against several Prestige officers, directors, and shareholders—including Lane—for breach of contract, fraud, and bad-faith (*Rasko v. Lane*).[2] Pillinger voluntarily dismissed *Rasko v. Lane* approximately four months

---

1. "Wrongful institution of civil proceedings" is the correct legal term where the underlying matter was a civil action. *Smith v. Lucia*, 173 Ariz. 290, 291, 842 P.2d 1303, 1304 (App.1992). Although occasionally used interchangeably, the term "malicious prosecution" is technically correct where the underlying action was a criminal one. *See, e.g., Frey v. Stoneman*, 150 Ariz. 106, 722 P.2d 274 (1986).

2. We refer to the complaint underlying this action for wrongful civil proceedings as *Rasko v. Lane;* below this complaint was entitled *Rasko v. Rouse, et al.*, CV–93–11725.

after filing the complaint.[3] Pillinger's supporting affidavit states that the suit was dismissed after he concluded that prosecuting the case would be extremely difficult, time consuming and expensive, and any damages would be difficult to collect given that the defendants were numerous and dispersed across the country. Lane was never served with the complaint.

Lane's claim for wrongful civil proceedings arises out of *Rasko v. Lane.* Pillinger filed a motion for summary judgment arguing that, based on the undisputed facts, Lane could not establish that the voluntary dismissal of *Rasko v. Lane* was a termination in Lane's favor or that Lane had sustained any damages. The trial court granted the motion, finding that "reasonable minds could not differ on the fact that the *dismissal* of the action on which plaintiff bases his malicious prosecution claim did not 'reflect on the merits of the action.'" Lane timely appealed. We have jurisdiction over this matter pursuant to Ariz.Rev.Stat. Ann. (A.R.S.) § 12–2101(B).

## DISCUSSION

■ A plaintiff in an action for wrongful civil proceedings must prove the following five elements: (1) that a prior action terminated in favor of the plaintiff, (2) that the defendant initiated the prior action, (3) with malice, (4) without probable cause, and (5) that damages were sustained. *Frey v. Stoneman,* 150 Ariz. 106, 109, 722 P.2d 274, 277 (1986); *Smith v. Lucia,* 173 Ariz. 290, 842 P.2d 1303 (App.1992). Pillinger's motion below attacked the sufficiency of Lane's evidence as to two elements: proof of damages and favorable termination. The trial court granted the summary judgment on the favorable termination element without addressing damages. Because it is dispositive, we also limit our review to the favorable termination element.[4]

### Favorable Termination

■ A judgment on the merits for the defendant after a trial is always a favorable termination. *Frey,* 150 Ariz. at 110, 722 P.2d at 278; Restatement (Second) of Torts section 674 comment j (Restatement § 674 cmt. j). However, here we have no trial—only a voluntary dismissal by Pillinger.

■ While a plaintiff's dismissal of a civil action *may under some circumstances* be considered a termination of the action in favor of a defendant, not all voluntary dismissals constitute favorable termination. *See Frey,* 150. Ariz. at 110, 722 P.2d at 278; Restatement § 674 cmt. j. "When a termination or dismissal indicates in some fashion that the accused is innocent of wrongdoing, it is a favorable termination. However, if it is merely a procedural or technical dismissal it is not favorable." *Frey,* 150 Ariz. at 110, 722 P.2d at 278; *see also* W. Prosser & W. Keeton, Law of Torts § 119 at 874 (termination to be favorable must reflect on merits and not be merely a procedural victory).

The Arizona Supreme Court in *Frey* stated:

[W]here there has been no adjudication on the merits the existence of a "favorable termination" of the prior proceeding generally must be found in the substance rather than the form of prior events and often involves questions of fact.... If the action was dismissed because of voluntary withdrawal or abandonment by the plaintiff, the finder of fact may well determine that this was, in effect, a confession that the case was without merit. Restatement § 673 comment e. However, there may be many reasons, other than a lack of merit, for such withdrawal or abandonment. For instance, the plaintiff might have had insufficient funds to pursue the action or could have decided that a possible recovery

---

3. Rule 41(a)(1), Arizona Rules of Civil Procedure, allows voluntary dismissal "by the plaintiff without order of court by filing a notice of dismissal at any time before service by the adverse party of an answer...." Such dismissal is considered "without prejudice."

4. "On appeal from a summary judgment we determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui,* 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993). We view the evidence in the light most favorable to the party opposing the motion. *Id.*

was not worth the cost, pecuniary or emotional, of litigating....

*Id.* at 111, 722 P.2d at 279 (footnote omitted). Further, Restatement § 674 cmt. j makes it clear that a withdrawal is favorable "in fact only when shown to be so by the surrounding circumstances." *Id.* at 111 n. 7, 722 P.2d at 279 n. 7.

The court in *Frey* relied on "well-reasoned" California cases embodying that state's "well-developed jurisprudence in this area...." *Id.* at 110, 722 P.2d at 278. Among these is *Minasian v. Sapse,* 80 Cal. App.3d 823, 145 Cal.Rptr. 829 (1978). *Minasian* indicates that for a voluntary dismissal to constitute a "favorable termination," it must reflect the opinion of the dismissing party that the action was meritless. 145 Cal.Rptr. at 832.

## Favorable Termination is a Question of Law

■ The case below was voluntarily dismissed shortly after being filed. Pillinger submitted an affidavit explaining his reasons for voluntarily dismissing *Rasko v. Lane.*[5] The factors cited by Pillinger parallel the common reasons listed by the Arizona Supreme Court in *Frey* as reasons, distinct from merit, why dismissals may be sought by plaintiffs. Lane presents no direct evidence to contradict Pillinger's affidavit. Lane merely enumerates several purported facts which he asserts raises the level of factual ambiguity to the point where summary judgment was inappropriate and a jury trial required. Given these facts, Lane believes that a jury could infer a termination in his favor.

Lane's facts are: (1) Rasko's own expert on bad-faith claims opined that there was no factual basis for a fraud claim;[6] (2) Lane had only began to work for Prestige in December 1992—after Prestige had already paid Rasko's underinsured motorist claim;[7] (3) Pillinger under oath at his deposition stated that he had made a thorough investigation before filing the *Rasko v. Prestige* bad-faith claim;[8] and (4) Pillinger's correspondence included subtle threats suggesting that *Ras-*

5. Pillinger had concluded that despite his belief in the merits of the action, "because the defendants were numerous and scattered across the country, [*Rasko v. Lane*] would be an extremely difficult, time consuming and expensive case to prosecute to conclusion" and any damages would be difficult to collect.

6. The portion of the deposition transcript relied on by Lane refers to statements by the expert, Mr. Hutson, about two Prestige employees: Ms. Kennedy and Mr. Rouse. Kennedy and Rouse were named in the *Rasko v. Lane* suit along with approximately fifty other defendants; neither Kennedy nor Rouse is claiming malicious prosecution here. Our review of the deposition excerpts of Mr. Hutson indicates merely that based on the information available to him at that point he had not seen behavior indicating fraud by either Kennedy or Rouse. Apparently, no statements were made regarding Lane or the other defendants.

7. Although the underinsured motorist claim had already been paid, as Lane states, by the time he came to work for Prestige, the *Rasko v. Prestige* action alleging bad-faith in its practices was still ongoing. We need not address here whether Lane's involvement during the bad-faith litigation alone could provide a sufficient basis for his inclusion as a defendant.

We also do not address Lane's argument that *Rasko v. Lane* was dismissed right after *Rasko v. Prestige* settled, assertedly thus proving that the action against Lane and the other individuals was only filed to pressure Prestige into settlement. Lane's attorneys claimed in this appeal that "after the *Rasko vs. Prestige* litigation was settled, Mr. Pillinger entered a voluntary dismissal against Mr. Lane and all the other defendants," and asserted in the trial court that "the lawsuit was essentially dismissed after Mr. Pillinger could only coerce $40,000 out of Prestige at a settlement conference." However, Lane has included nothing in the record on appeal to support these allegations. The record before us reveals neither the timing nor the substance of any settlement as to *Rasko v. Prestige.* Further, the dollar amount of any settlement in *Rasko v. Prestige* would shed little or no light on the question before us, that is, whether Pillinger's dismissal of *Rasko v. Lane* shows that the claims against Lane were meritless.

8. Finding no evidence in the record to support the contention that Pillinger had *actual knowledge* that Lane was not yet employed by Prestige at the time the company allegedly acted tortiously as to Rasko, we do not *infer* it. In fact, Lane's accusation against Pillinger, repeated throughout Lane's deposition, is that Pillinger failed to review the materials that would have revealed that Lane was not employed by Prestige while Rasko's UIM claim was pending. Further, while Lane claims in this appeal that Pillinger reported having thoroughly investigated Lane before suing him, there is nothing at all in the record before us reflecting what Pillinger knew about Lane.

ko v. Lane had been filed to gain leverage in the *Rasko v. Prestige* bad-faith litigation.[9]

Lane urges that these "facts" support the inference that Pillinger voluntarily withdrew *Rasko v. Lane* because Pillinger knew it was meritless. Lane argues that "[t]he very fact that evidence shows the case against Mr. Lane to be totally groundless in and of itself could well cause a jury to not accept the subjective assertions of Mr. Pillinger contained in his Affidavit supporting Motion for Summary Judgment." Lane's facts neither establish that Pillinger dismissed the action because Lane was "innocent of wrongdoing" nor create sufficient ambiguity to require a jury to determine the circumstances surrounding the dismissal. *See Frey*, 150 Ariz. at 110–11, 722 P.2d at 278–79.

Indeed, these facts utterly fail to advance Lane's proposition that the "real reason" Pillinger chose to dismiss the lawsuit was because it had no merit. The opinions of Pillinger's expert as to the viability of claims against Rouse and Kennedy say nothing about Pillinger's beliefs as to the claim against Lane. That Lane was not working for Prestige when it purportedly conducted itself in bad-faith toward Pillinger's client cannot have affected Pillinger's evaluation of the merits of the action if Pillinger did not know this, and there is no evidence that he did. And if Pillinger filed the claim against Lane in aid of the suit against Prestige, and even if such a purpose were improper and thus indicative of malice, this leveraging motive cannot establish that the claim was dismissed because Pillinger concluded it lacked merit. Good cases and bad cases can provide lever-

age on the person against whom they are brought.

This record is devoid of any evidence which could prove that Pillinger brought this claim knowing that it lacked merit and then dismissed it when it had served his collateral purposes. The record similarly fails to establish that Pillinger dismissed the claim against Lane after experiencing an epiphany as to its groundlessness. If all of Lane's facts were true, and Pillinger hoped by filing against Lane to get a settlement from Prestige, and Lane was not employed by Prestige when it was purported to have conducted itself tortiously against Rasko, and Pillinger's expert thought there was no case against either Rouse or Kennedy, these facts still cannot avail Lane in his attempt to show a favorable termination. Unless Pillinger knew that Lane did not work for Prestige when it was supposedly doing Rasko wrong, then these facts do not help show awareness by Pillinger of a lack of merit in *Rasko v. Lane*, and therefore cannot show the "real reason" Pillinger dismissed it.

"The ultimate legal decision with respect to what constitutes a favorable termination rests with the judge." *Frey*, 150 Ariz. at 111, 722 P.2d at 279. Only "when the circumstances surrounding the termination of the prior proceedings are ambiguous" is the assistance of a factfinder necessary. *Id.* This case does not present the same maelstrom of controverting facts that the physician-plaintiffs in *Frey* adduced in opposing summary judgment on their claim of wrongful institution of civil proceedings.[10] Those

---

9. Pillinger's letters did include language indicating an attempt at "leveraging." We assume, without deciding, that an attorney's leveraging one claim against another *is not improper*, absent perhaps the situation outlined by Restatement § 674 cmt. d (an attorney who files an action without probable cause and for the improper purpose of exerting leverage as to another claim *of his own* is subject to liability; an attorney is not liable if he acts for the proper purpose of aiding his client in a proper adjudication of the client's claim).

10. The *Frey* court outlined the factual disputes thusly:

In the case at bench, there are many genuine issues of material fact concerning the dismiss-

al. The doctors argue that they fully intended to obtain a decision on the merits and that Stoneman dismissed the lawsuit because he knew he could not prove the doctors' negligence. Stoneman denies this. The parties also dispute the intent of the trial court. There is further disagreement as to why no costs were awarded on dismissal. Two [separate] judgments were signed. The sequence of events and correspondence between the parties' attorneys is ambiguous as to what was intended or what actually occurred. Stoneman claims there was an offer of compromise or an inducement, such as foregoing costs, which might be a form of settlement mitigating against a finding of favorable termination ... Stoneman claims also that the dismissal was the result of an agreement. On these confus-

facts clearly illustrate that the underlying medical malpractice action in *Frey* was dismissed specifically to avoid summary judgment on the merits. Indeed, in *Frey* the underlying action had been dismissed by the plaintiff while summary judgment was pending and after the doctors had indicated that they insisted on a decision on the merits in the case. 150 Ariz. at 108, 722 P.2d at 276. Summary judgment was entered a few days after the dismissal in *Frey*. *Id.* Like the trial court below, we find here no like ambiguity as to the circumstances of the dismissal in *Rasko v. Lane.*

> Summary judgment is appropriate when there is no substantial evidence to support an alleged factual dispute, either because the tendered evidence is too incredible to be accepted by reasonable minds, or because, even conceding its truth, it leads to an inevitable legal conclusion against its proponent. The inquiry in summary judgment cases, as in directed verdict cases, is whether reasonable jurors applying the law to the facts could reach but one conclusion.

*Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990). The party opposing summary judgment is given the benefit of inferences that may be *reasonably* drawn from the evidence. *See id.* On this record, no jury could have reasonably found the circumstances of this dismissal to be such as to lead to a legal conclusion that the dismissal was a "favorable termination" reflecting that Lane was innocent of wrongdoing. We agree with the trial court that Lane did not obtain a "favorable termination" in the lawsuit brought against him by Pillinger for Rasko.

### CONCLUSION

Accordingly, the summary judgment below is affirmed.

LANKFORD and GARBARINO, JJ., concur.

ing facts the conflicting allegations raise questions which must be resolved by the jury.