988 P.2d 143

**Charles M. GILES and Susan P. Giles, husband and wife, Plaintiffs/Appellants,**

v.

**HILL LEWIS MARCE, a Partnership, Defendant/Appellee.**

No. 2 CA–CV 98–0033.

Court of Appeals of Arizona, Division 2, Department B.

March 23, 1999.

Review Denied Oct. 26, 1999.*

* Chief Justice Zlaket recused himself and did not participate in the determination of this matter.

Law Office of S. Jon Trachta By S. Jon Trachta, Tucson, Attorney for Plaintiffs/Appellants.

O'Connor Cavanagh Molloy Jones By Peter Akmajian and Paul A. Relich, Tucson, Attorneys for Defendant/Appellee.

ESPINOSA, Judge.

¶ 1 Plaintiffs/appellants Charles M. Giles and Susan P. Giles, husband and wife, appeal from the trial court's order granting a motion for judgment on the pleadings filed by defendant/appellee Hill Lewis Marce (HLM), a law firm, and dismissing their complaint for abuse of process and other claims. The Gileses' claims were based on HLM's alleged conduct during its representation of the opposing party in an action the Gileses had initiated which was ultimately settled. On appeal, they contend Arizona law does not prohibit a cause of action for abuse of process against opposing counsel and that the settlement of the underlying action does not necessarily bar a claim for malicious prosecution absent a determination of whether the settlement was favorable to them. Because we find both contentions correct, we vacate the judgment in favor of HLM and remand the matter for further proceedings.

*Standard of Review*

¶ 2 A motion for judgment on the pleadings pursuant to Rule 12(c), Ariz. R. Civ. P., 16 A.R.S., tests the sufficiency of the complaint, and judgment should be entered for the defendant if the complaint fails to state a claim for relief. *Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 428 P.2d 990 (1967); *In re One Single Family Residence and Real Property Located at 15453 N. Second Ave.*, 185 Ariz. 35, 912 P.2d 39 (App. 1996). In reviewing a judgment on the pleadings, we treat the allegations of the complaint as true, but conclusions of law are not admitted. *Shannon.*

*Facts and Procedural History*

¶ 3 In February 1993, Charles M. Giles, P.C., filed a breach of contract action in Pima County seeking "to resolve certain differences" it was having with Bell Atlantic Tricon Leasing. HLM represented Bell Atlantic and moved for a change of venue to Maricopa County. The motion was denied. HLM then filed an answer and counterclaim, and served its disclosure statement. In July, HLM filed a separate complaint on behalf of Bell Atlantic in Maricopa County against Charles M. Giles, P.C., and Charles and Susan Giles in which they made allegations identical to those in the counterclaim filed in the Pima County action. Although HLM was informed that the Gileses had continuously resided in Pima County for thirty years, had no connection to Maricopa County, and would incur additional attorneys' fees there, it refused to consent to a change of venue to Pima County. Consequently, the Gileses moved the Maricopa County superior court for a change of venue. While that

motion was pending, HLM moved for summary judgment, nothwithstanding the fact that the Gileses had not yet answered the complaint. During this time, HLM continued to send pleadings to the Gileses' home, even though it knew they had retained Phoenix counsel. After discovery had begun and the Gileses had incurred attorneys' fees and costs in excess of $9,000 in connection with the Maricopa County action, the trial court granted their motion to change the venue of that action to Pima County. In the Pima County action, HLM failed to disclose certain documents, made incomplete and inadequate disclosure, and withheld information that contradicted Bell Atlantic's position in that litigation. The two cases were consolidated and the parties later settled.

¶4 The Gileses filed a complaint against HLM, alleging claims of abuse of process, violation of the Rules of Professional Conduct, Ariz. R. Sup.Ct. 42, 17A A.R.S., violation of Rule 11, Ariz. R. Civ. P., and intentional and negligent infliction of emotional distress, all arising out of the Bell Atlantic litigations. They subsequently sought leave to amend their complaint to add a claim for malicious prosecution. HLM moved for judgment on the pleadings pursuant to Rule 12(c), Ariz. R. Civ. P., arguing that the only claim that could be brought against opposing counsel as a result of prior litigation was a claim for malicious prosecution, and that the Gileses could not prove such a claim as a matter of law, given the fact that the prior litigation had settled. The trial court granted HLM's motion and dismissed their "complaints." This appeal followed.

## Abuse of Process

¶5 The Gileses first argue that the trial court erred in finding that Arizona law prohibits an abuse of process claim against opposing counsel. Citing *Linder v. Brown & Herrick,* 189 Ariz. 398, 943 P.2d 758 (App. 1997), and *Lewis v. Swenson,* 126 Ariz. 561, 617 P.2d 69 (App.1980), HLM responds, as it persuaded the trial court, that the only claim

that may be brought against opposing counsel is a claim for malicious prosecution. In *Linder,* Division One of this court upheld the dismissal of the plaintiff's claims of fraud and intentional infliction of emotional distress against opposing counsel in a previous action, finding the claims not only insufficiently pleaded, but precluded by an earlier judgment. The court nevertheless went on to state that, in Arizona, case law limits claims against opposing counsel to malicious prosecution.[1] In reaching that conclusion, Division One relied on *Green Acres Trust v. London,* 141 Ariz. 609, 688 P.2d 617 (1984), and language in *Lewis* which quoted from the California case of *Norton v. Hines,* 49 Cal.App.3d 917, 123 Cal.Rptr. 237, 240 (1975), as follows:

> Clearly, an adverse party is not an intended beneficiary of the adverse counsel's client. If a cause of action exists against attorneys ..., it must be pleaded as an action for malicious prosecution. We see no reason to extend applicable law now found in cases involving attorneys and third parties when there is sound and recognized public policy for limiting the cause of action to malicious prosecution.

The factual context of *Lewis,* however, is pertinent. That case involved allegedly improper questioning and testimony during trial. After examining the law of defamation and the public policy of affording litigants and their attorneys the freedom to "state anything at trial which relates to the matter at issue," 126 Ariz. at 564, 617 P.2d at 72, the court concluded:

> For the same reasons of public policy which dictate granting an absolute privilege to witnesses and attorneys from suits for defamation for statements made in the course of trial, we believe there is a privilege to attorneys at trial to ask questions of witnesses which have a relation to the proceedings without fear of subjecting themselves to a civil action for damages by an opposing litigant.

*Id.* at 565, 617 P.2d at 73.

¶6 We agree with the Gileses that *Linder* and *Lewis* are not controlling for several

---

1. HLM points out that if the underlying matter is civil, the correct terminology is "wrongful institution of civil proceedings," rather than "malicious prosecution," a term technically based upon behavior in an underlying criminal action.

*Lane v. Terry H. Pillinger, P.C.,* 189 Ariz. 152, 939 P.2d 430 (App.1997). Because most of the cases use these terms interchangeably and for the sake of consistency and convenience, we follow suit.

reasons. First, they are distinguishable because neither involved an abuse of process claim. They addressed only the question of whether negligence or fraud claims could be asserted against opposing counsel. Although HLM argues "the same kind of conduct is at issue here," and, indeed, there are similarities between the Gileses' non-disclosure claims and the fraud allegations in *Linder*, as the Gileses point out, those allegations involved "actions taken or representations made to the court in connection with a trial or court hearings." Given the legal and public policy foundations of *Linder*, we decline to apply it beyond its specific facts.

¶ 7 In both *Linder* and *Lewis*, the public policy for not permitting fraud and negligence claims against opposing counsel was premised upon the absolute privilege from defamation afforded participants in judicial proceedings. In *Green Acres Trust*, relied upon by the *Linder* court, our supreme court stated, "The socially important interests promoted by the absolute privilege in this area include the fearless prosecution and defense of claims which leads to complete exposure of pertinent information for a tribunal's disposition.... The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." 141 Ariz. at 613, 688 P.2d at 621. None of these considerations, however, is implicated in an abuse of process action.

¶ 8 Significantly, the court in *Green Acres Trust* declined to extend the defamation privilege to the attorneys' conduct at issue in that case, the making of extra-judicial statements to the press. The court observed that " '[a]n attorney has a duty to represent his or her clients zealously. But an attorney has as compelling an obligation to avoid unnecessary harm to an adversary.' " *Id.* at 615, 688 P.2d at 623, *quoting Schulman v. Anderson Russell Kill & Olick, P.C.*, 117 Misc.2d 162, 458 N.Y.S.2d 448, 455 (Sup.Ct.1982). Because an attorney's duty to vigorously represent a client is limited by rules of law and principles of ethics and professionalism, *see Norton*, it is not "chilled" by any threat of liability for abuse of process for behavior beyond those constraints. Indeed, "[t]he privilege an attorney has for his

actions in representing a client is a qualified one that does not extend to the intentional torts of malicious prosecution and abuse of process." *McElhanon v. Hing*, 151 Ariz. 386, 394, 728 P.2d 256, 264 (App.1985), *vacated in part on other grounds*, 151 Ariz. 403, 728 P.2d 273 (1986). Thus, the public policy invoked in *Linder* and *Lewis* does not exist for abuse of process claims. Accordingly, HLM's contention that its actions in the underlying litigation were privileged is without merit.

■ ¶ 9 We note that in *Norton*, the California court stated that actions against opposing counsel sounding in simple negligence would subvert "the public policy of favoring free access to our courts." 123 Cal.Rptr. at 241. The court observed that malicious prosecution provides a remedy to wrongfully sued defendants while requiring a more demanding standard of proof than negligence claims. *See also Bird v. Rothman*, 128 Ariz. 599, 627 P.2d 1097 (App.1981) (simple negligence an improper standard upon which to base liability of an attorney to an adverse party). Similarly, the tort of abuse of process requires a more demanding standard of proof than mere negligence, while providing a remedy to those who are harmed by misuse of judicial process. The essential elements of such a claim are an ulterior purpose and a willful act in the use of judicial process not proper in the regular conduct of the proceeding. *Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876 (App.1982); *see also* Restatement (Second) of Torts § 682 (1977). Liability will result only when the attorney's awareness that his or her action "will necessarily subject the opposing party to additional legal expenses ... progresses to a sense of purpose, and, in addition the utilization of the procedure for the purposes for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Nienstedt*, 133 Ariz. at 354, 651 P.2d at 882.

¶ 10 Contrary to HLM's suggestions, neither *Nienstedt* nor *Bird* supports a different result in this case. HLM points out that the defendant attorney in *Nienstedt* had represented himself in the underlying action and distinguishes the abuse of process claim up-

held in that case as having been brought against him in his capacity as a party, not an attorney. Division One, however, discussed his conduct in his role as an attorney:

> We recognize that the utilization of virtually any available litigation procedure by an attorney will generally be accompanied by an awareness on that attorney's part that his action will necessarily subject the opposing party to additional legal expenses. The range of feeling in the initiating attorney evoked by that awareness might well vary from instances of actual indifference to instances of intense satisfaction. By our holding in this case we do not intend to suggest that liability for abuse of process should result from either of the said instances alone.... As previously stated, there was evidence presented here of many instances from which a trier of fact could have concluded that the ulterior or collateral purpose of appellant Manfred Wetzel to subject the Nienstedts to excessive litigation expenses was in fact his primary purpose, and that his use of various legal processes was not justified or used for legitimate or reasonably justifiable purposes of advancing appellants' interests in ongoing litigation.

133 Ariz. at 354, 651 P.2d at 882. Furthermore, although we upheld the granting of summary judgment disposing of the appellant's abuse of process claim against opposing counsel in *Bird*, it was because there was insufficient evidence to create a material question of fact, not because such a claim was disallowed under Arizona law. *See also McElhanon.*

■ ¶ 11 Many other jurisdictions allow a cause of action against opposing counsel for abuse of process. *See Bull v. McCuskey*, 96 Nev. 706, 615 P.2d 957 (1980) (sufficient evidence to go to jury in physician's action against attorney for abuse of process); *Board of Education v. Farmingdale Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975) (complaint stated cause of action for abuse of process against attorney for teachers' association); *Clausen v. Carstens*, 83 Or.App. 112, 730 P.2d 604 (1986) (sufficiently alleged cause of action for abuse of process against wife's

attorneys where husband alleged they procured receiver over his businesses for ulterior purposes); *Ely v. Whitlock*, 238 Va. 670, 385 S.E.2d 893 (1989) (plaintiff attorneys sufficiently alleged abuse of process claim against opposing counsel in prior action); *see also Keen v. Ruddy*, 784 P.2d 653 (Alaska 1989) (finding plaintiffs failed to prove opposing counsel abused process); *Alumet v. Bear Lake Grazing Co.*, 112 Idaho 441, 732 P.2d 679 (App.1986) (although counterclaims against plaintiff's counsel for malicious prosecution and abuse of process were properly dismissed from declaratory judgment action, subsequent proceedings on those claims were still available to defendant); Restatement (Second) of Torts § 682 cmt. a, illus. 3 (1977) (describing attorney behavior that results in abuse of process liability to opposing litigant). *But see Taco Bell Corp. v. Cracken*, 939 F.Supp. 528 (N.D.Tex.1996) (under Texas law, abuse of process claim not permitted against opposing counsel in prior action). Viewing the allegations of the Gileses' complaint as true, *One Single Family Residence*, we conclude they sufficiently alleged a viable abuse of process claim, and that such a claim is not precluded under Arizona law.

### Malicious Prosecution

■ ¶ 12 The Gileses next contend that the mere existence of a settlement does not bar a claim for malicious prosecution, and the trial court was required to determine whether the settlement was in fact favorable to them before dismissing their claim. In an action for malicious prosecution, the plaintiff must show the defendant instituted a civil action which was motivated by malice, begun without probable cause, terminated in favor of the plaintiff, and damaged the plaintiff. *Lane v. Terry H. Pillinger, P.C.*, 189 Ariz. 152, 939 P.2d 430 (App.1997). Even though the underlying case was concluded by a settlement, rather than an adjudication on the merits, the termination may nonetheless be favorable to the plaintiff. *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 758 P.2d 1313 (1988); *Frey v. Stoneman*, 150 Ariz. 106, 722 P.2d 274 (1986). When there has been no adjudication on the merits, "the existence of a 'favorable termination' of the prior proceeding generally must be found in

the substance rather than the form of prior events and often involves questions of fact." *Frey*, 150 Ariz. at 111, 722 P.2d at 279; *see also Bradshaw*, 157 Ariz. at 419, 758 P.2d at 1321 ("The true facts, not the form of disposition, are determinative.").

¶ 13 As the *Frey* court noted, there may be many reasons for the withdrawal or abandonment of a claim through settlement, other than lack of merit. These reasons include insufficient funds to pursue the action, a decision that any possible recovery was not worth the pecuniary or emotional cost of litigation, a decision "to forgive and forget or the defendant may have paid smart money or taken other measures, such as apology, to assuage plaintiff's anger." 150 Ariz. at 111, 722 P.2d at 279. No one factor is determinative. *Id.* Although neither party conceded any liability, the Gileses received more than $40,000, the entire amount held in trust on the Giles firm's claim for attorneys' fees, paying only $10,000 to Bell Atlantic. This record is insufficient to determine as a matter of law whether the settlement was or was not favorable to the Gileses because it does not indicate what relief they or Bell Atlantic sought in the underlying actions, or their reasons for accepting the settlement. *See Bradshaw; Frey; see also* Restatement (Second) of Torts § 674 cmt. j (1977) (favorable termination may arise from "the withdrawal of the proceedings by the person bringing them"). We therefore conclude the trial court erred in dismissing the Gileses' claim for malicious prosecution.

*Disposition*

¶ 14 The judgment on the pleadings is vacated and the case is remanded to the trial court for further proceedings.

CONCURRING: JOHN PELANDER, Judge, and JOSEPH W. HOWARD, Acting Presiding Judge.