NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ARNALDO TRABUCCO, *Plaintiff/Appellee*,

*v.*

JEFFREY COGAN, *Defendant/Appellant*.

No. 1 CA-CV 18-0526
FILED 4-7-2020

Appeal from the Superior Court in Mohave County
No. B8015CV201404030
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART;
REMANDED WITH DIRECTIONS**

COUNSEL

Wilenchik & Bartness, P.C., Phoenix
By Dennis I. Wilenchik, John D. Wilenchik, Christopher A. Meyers
*Counsel for Plaintiff/Appellee*

Jeffrey A. Cogan, Las Vegas, Nevada
*Defendant/Appellant*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

¶1        Jeffrey A. Cogan, a bankruptcy attorney licensed in Nevada and California, appeals the superior court's judgment in favor of Dr. Arnaldo Trabucco ("Dr. Trabucco").   After cross-motions for partial summary judgment, the superior court found Cogan liable on claims of malicious prosecution[1] and abuse of process, then held a trial on damages. The jury returned a verdict assessing $8,000,000 in compensatory and punitive damages, plus costs, against Cogan, and Cogan appealed.  For the following reasons, we affirm the finding of liability for malicious prosecution, reverse the finding of liability for abuse of process, vacate the judgment with regard to damages awarded against Cogan, affirm the judgment with regard to Helen Scharf, Karen Bright, and Randall Scharf (collectively, "the Scharfs"), and remand with directions for the superior court to enter judgment in favor of Cogan as to liability on the abuse of process claim only and for a new trial on the issue of damages based only on the finding of malicious prosecution.

## FACTS AND PROCEDURAL HISTORY

¶2        In September 2012, Dr. Trabucco performed kidney surgery — a laparoscopic left radical nephrectomy — on Gerald Scharf.  Three days later, Mr. Scharf died.

¶3        Dr. Trabucco had been embroiled in a series of unrelated and extremely contentious financial and legal disputes — including but not limited to post-divorce proceedings with his ex-wife, Pamela, and a

---

[1]     We recognize that civil malicious prosecution is often and perhaps more properly referred to as "wrongful institution of civil proceedings." *Chalpin v. Snyder*, 220 Ariz. 413, 419, ¶ 20 n.5 (App. 2008) (citing *Giles v. Hill Lewis Marce*, 195 Ariz. 358, 360, ¶ 5 n.1 (App. 1999)).  Because the parties and superior court consistently used the term malicious prosecution, we do as well.

complaint filed against him by Dr. Richard Cardone, a Mohave County physician, who had sued Dr. Trabucco for defamation.[2] Dr. Trabucco had numerous creditors, and in November 2012, he filed for Chapter 7 bankruptcy protection.

¶4 Cogan represented Pamela Trabucco's interests as a creditor in the bankruptcy proceeding. At the first meeting of the creditors in 2012, Cogan met Dr. Cardone's wife, Joanne, and he soon began representing Dr. Cardone. Joanne Cardone later put Cogan in touch with Gerald Scharf's widow, Helen, and Cogan eventually represented six creditors/clients with respect to Dr. Trabucco's bankruptcy: the Scharfs; Pamela Trabucco; Pamela Houle; and Dr. Cardone.

¶5 Meanwhile, through separate counsel, the Scharfs on March 11, 2013, filed a medical malpractice lawsuit against Dr. Trabucco in Mohave County Superior Court ("the 2013 Mohave County case"). The Scharfs' attorney in that lawsuit subsequently died, and Cogan took over their representation.

¶6 Rather than continue to litigate the 2013 Mohave County case, however, Cogan let that case lie dormant and filed an adversary "Complaint to Determine Nondischargeability of Debts" against Dr. Trabucco in Nevada bankruptcy court in May 2013, alleging negligence. Then, on July 16, 2013, Cogan filed a First Amended Complaint to Determine Nondischargeability of Debts on behalf of the Scharfs in bankruptcy court, asserting the same wrongful death claims as alleged in the 2013 Mohave County case, but dropping the negligence claim against Dr. Trabucco, and instead alleging that Dr. Trabucco had "committed willful and malicious actions upon Mr. Scharf, eventually resulting in Mr. Scharf's death," and Dr. Trabucco's actions constituted "extreme and outrageous behavior." More specifically, the allegations included the following: (1) Dr. Trabucco knew he lacked sufficient experience and

---

[2] As requested by Cogan and unopposed by Dr. Trabucco, we take judicial notice of the fact that Dr. Trabucco later entered a settlement with Dr. Cardone in May 2014, pursuant to which Dr. Trabucco agreed to not practice medicine in Mohave County for at least ten years. *See* Ariz. R. Evid. 201; *Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 196, ¶ 5 n.2 (App. 2017) (review denied July 24, 2018) (taking judicial notice of a superior court sentencing minute entry on the ground that the facts were not the subject of reasonable dispute); *but see In re Henry's Estate*, 6 Ariz. App. 183, 188 (1967) (declining to take judicial notice of legal proceedings transacted in another court).

expertise regarding laparoscopic nephrectomy, and that he did not have hospital privileges to perform such a procedure; (2) Dr. Trabucco intentionally misled the Scharfs regarding his experience and expertise regarding laparoscopic nephrectomy; (3) an interoperative complication/injury occurred due to an error by Dr. Trabucco; (4) Dr. Trabucco knew this error had occurred and yet continued the operation without addressing the interoperative complication/injury; (5) following the surgery, Dr. Trabucco hid the fact that an interoperative complication/injury had occurred; (6) although he knew Mr. Scharf was seriously injured and would probably die, Dr. Trabucco did not attempt to remedy the situation, and instead lied to the Scharf family and hospital staff; and (7) Dr. Trabucco interfered with and delayed the subsequent medical transfer of Mr. Scharf, again with the intention of hiding the interoperative complication/injury or other malicious intent. As Cogan later explained, his basis for making such allegations was that "[u]nder bankruptcy law, negligence is a dischargeable matter of law. We were required to show willful, malicious injury which necessarily involves intentional conduct and kind of extreme and outrageous intentional conduct, and thus, the amended complaint was fashioned as such."[3]

¶7        Cogan admittedly didn't "know medical terms, medical procedures and the like," so he hired Joanne Cardone, who is a nurse, as his paralegal. Unknown to Cogan, Joanne Cardone had filed complaints against Dr. Trabucco with various agencies, including the Department of Health and Human Resources, the Nevada State Board of Medical Examiners, and the Arizona Medical Licensing Board, and sent letters to Dr. Trabucco's relatives, friends, business associates, referral sources, and judges handling Dr. Trabucco's divorce, all in an effort to discredit Dr. Trabucco. After learning of Joanne Cardone's continuing activities in this regard, Cogan terminated her employment.

¶8        Realizing Cogan was not experienced in medical malpractice litigation, Dr. Trabucco's medical malpractice defense attorney, Scott Holden, took Cogan aside after the first hearing following filing of the First Amended Complaint and explained to Cogan that (1) "if you accuse someone [of] intentionally causing the death of a patient, you better have evidence to back that up," (2) Cogan's "essential medical theory made no sense," and (3) the allegations in the First Amended Complaint could

---

[3]        *See* 11 U.S.C. § 523(a)(6) ("A discharge under [specified sections] of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity.").

adversely affect any existing liability insurance coverage because, "[i]f you accuse a doctor of intentional conduct, the [malpractice] insurance [coverage] goes away." Thereafter, Holden repeatedly demanded that Cogan produce evidence to support his claims that Dr. Trabucco had intentionally and maliciously caused the death of Gerald Scharf, and he threatened to seek sanctions against Cogan pursuant to Arizona Rule of Civil Procedure ("Rule") 11.

¶9        Cogan acknowledged it was "unfair to Dr. Trabucco to make these allegations," but explained that, in his opinion, "these are the only allegations that I can make, ie. (sic) intentional tort and they would survive a Rule 11 claim" because the surgery had continued well beyond the anticipated two hours and because Dr. Trabucco had "consent to open the [surgical] field and did not," indicating Dr. Trabucco made a conscious decision not to convert the laparoscopic procedure to an open procedure for which he had pre-operative consent and instead, according to Cogan, prematurely terminated the surgery.

¶10       In February 2014, the parties stipulated to dismiss the First Amended Complaint in bankruptcy court with prejudice. The stipulation allowed the Scharfs to institute a medical negligence action against Dr. Trabucco if they obtained bankruptcy court approval to pursue claims against him personally, but the dismissal was final and binding as to any allegations of malicious or intentional conduct by Dr. Trabucco.

¶11       On February 28, 2014, Dr. Trabucco filed the complaint in this case against Cogan and the Scharfs, alleging malicious prosecution, abuse of process, and intentional infliction of emotional distress.[4] Cogan initially represented only himself in this case but, after being admitted *pro hac vice* and notwithstanding the apparent conflict of interest, also represented the Scharfs.

¶12       Meanwhile, Dr. Trabucco moved to dismiss the 2013 Mohave County case for failure to prosecute, and in June 2014, that case was dismissed with prejudice by stipulation of the parties. Also, in July 2014,

---

[4]       Thus, at the time Dr. Trabucco filed his complaint in this case, Cogan had only filed and litigated the settled action in Nevada bankruptcy court (which included the First Amended Complaint) against Dr. Trabucco on behalf of the Scharfs. Although Cogan had taken over the Scharfs' representation, he did not file or ever actively litigate the 2013 Mohave County case and had apparently filed no other action against Dr. Trabucco on behalf of the Scharfs.

the bankruptcy court entered an order discharging Dr. Trabucco from all pre-petition debts.

¶13 In September 2014, Cogan filed an answer and counterclaims in this case, alleging a "survival claim" and wrongful death claim on behalf of the Scharfs. Cogan also filed a new complaint on behalf of the Scharfs in federal district court, alleging medical negligence and wrongful death claims against Dr. Trabucco.

¶14 In January 2015, the superior court granted Dr. Trabucco's motion for summary judgment on the counterclaims in this case.[5] Dr. Trabucco then filed a First Amended Complaint, adding a claim for negligent hiring, supervision, and retention against Cogan regarding the hiring of his paralegal, Joanne Cardone. In March 2015, Dr. Trabucco filed a Second Amended Complaint in this case, extending the claims of negligent hiring, supervision, and retention to Cogan's business entity.

¶15 In January 2016, Dr. Trabucco moved for partial summary judgment as to liability in this case. Cogan and the Scharfs cross-moved for partial summary judgment. After further briefing and oral argument in April 2016, the court took the matter under advisement.

¶16 Meanwhile, on October 6, 2017, the jury in the federal district court medical negligence case found unanimously in favor of Dr. Trabucco. Dr. Trabucco then filed an unopposed supplement to his motion for partial summary judgment in this case, informing the superior court of the result in federal court.

¶17 In January 2018, the superior court granted partial summary judgment in favor of Dr. Trabucco against Cogan and the Scharfs, finding no genuine issue of material fact as to their liability on the malicious prosecution and abuse of process claims. Later, in the parties' joint pretrial statement, the parties stipulated in part as follows: "Defendants filed a lawsuit against [Dr. Trabucco] alleging without probable cause that he intentionally and maliciously caused the death of his own patient, which was false."

¶18 At the July 2018 trial, which was to be limited only to the damages caused by Cogan's and the Scharfs' malicious prosecution and abuse of process, Dr. Trabucco claimed that, as a result of the actions of

---

[5] The record is unclear as to why the superior court granted the motion; however, during oral argument Cogan conceded he and the Scharfs were "okay if this court dismisses the counterclaim."

Cogan, the Scharfs, Joanne Cardone, and others, he lost his medical practice and had been damaged emotionally and financially.[6] The jury awarded $6,232,000 in compensatory damages and $1,768,000 in punitive damages, plus costs, to Dr. Trabucco and against Cogan, while assessing no damages against the Scharfs.

**¶19** Cogan did not file any post-trial motions but filed a timely notice of appeal from the court's signed judgment. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## ANALYSIS

### I. *Standard of Review*

**¶20** The superior court should grant summary judgment when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review *de novo* the grant of summary judgment, viewing the facts and all reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered. *Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 528, ¶ 31 (App. 2014) (citation omitted). "Summary judgment should be granted 'if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.'" *Aranki v. RKP Invs., Inc.*, 194 Ariz. 206, 208, ¶ 6 (App. 1999) (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990)).

### II. *Cogan's Objections to Authenticity*

**¶21** Cogan argues the superior court should have denied Dr. Trabucco's motion for partial summary judgment because several of the exhibits provided in support of the motion lacked authentication and were not admissible.

---

[6] Although not explicitly noted in the record, the parties at the appellate oral argument agreed that the claims for intentional infliction of emotional distress and negligent hiring/supervision/retention had been abandoned and subsequently were not to be presented to or considered by the jury. (However, we also note that, although not relevant to the remaining claims, the jury received substantial inflammatory evidence of Joanne Cardone's actions and communications concerning Dr. Trabucco—actions and communications that were apparently never authorized or approved by either Cogan or the Scharfs.)

**¶22**        "The trial court has broad discretion in admitting evidence, and we will not disturb its decision absent clear abuse of discretion and prejudice." *Pima Cty. v. Gonzalez*, 193 Ariz. 18, 22, ¶ 14 (App. 1998) (citation omitted). "In ruling on a party's motion for summary judgment, the trial court should consider those facts that would be admissible in evidence." *In re 1996 Nissan Sentra Vin: 1N4AB41D1TC74220 Az Lic: 162ARH*, 201 Ariz. 114, 117, ¶ 6 (App. 2001). In general, such facts "are those which are set forth in an affidavit or a deposition; an unsworn and unproven assertion in a memorandum is not such a fact." *Id.* (citing *Prairie State Bank v. IRS*, 155 Ariz. 219, 221 n.1A (App. 1987)); Ariz. R. Civ. P. 56(c)(5), (6). A proponent of evidence must establish foundation for it by first authenticating or identifying the evidence. Ariz. R. Evid. 901(a). The proponent does this by producing evidence "sufficient to support a finding that the item is what the proponent claims it is." *Id.* In considering whether evidence has been properly authenticated, we have adopted a flexible approach, "allowing a trial court to consider the unique facts and circumstances in each case—and the purpose for which the evidence is being offered." *State v. King*, 226 Ariz. 253, 257, ¶ 9 (App. 2011) (quoting *State v. Haight–Gyuro*, 218 Ariz. 356, 360, ¶ 14 (App. 2008)).

**¶23**        Cogan raised specific objections to the authenticity of certain exhibits in his written response opposing the motion for partial summary judgment, and he again made a generalized objection at oral argument on the motion. Although Dr. Trabucco argues Cogan never filed a controverting statement of facts in response to Dr. Trabucco's statement of facts supporting his motion for partial summary judgment, Cogan correctly notes that an objection may be included in a party's responsive memorandum. *See* Ariz. R. Civ. P. 56(c)(4). Accordingly, we decline to apply waiver to Cogan's argument on this basis.

**¶24**        Further, we agree with Cogan that Dr. Trabucco bore the burden of proof as to the authenticity of the proffered exhibits. *See* Ariz. R. Evid. 901(a); *see also Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 211, ¶ 1 (App. 2012) ("[A] plaintiff cannot shift the burden of proof to the defendant by filing a motion for summary judgment."); *MidFirst Bank v. Chase*, 230 Ariz. 366, 368, ¶ 6 (App. 2012) ("[T]he movant has the burden of proving both the absence of a genuine issue of material fact as to each element of its claim, and that it is entitled to judgment as a matter of law." (citation omitted)).

**¶25**        Nevertheless, although Cogan objected to the authenticity of certain exhibits in the superior court, he did not specifically object to all the exhibits to which he now objects on appeal, including his own e-mails. *See*

Ariz. R. Civ. P. 56(c)(4) ("Any objection presented in the party's response to the separate statement of facts must be stated concisely."). Further, in his "Statement of Uncontested Facts in Support of Motion/Cross Mot[]ion for Partial Summary Judgment," he affirmatively relied on several of the exhibits he now objects to on appeal, including other of his own e-mails, effectively conceding the authenticity of these exhibits. Moreover, the transcript of the July 9, 2014 oral argument on Cogan's motion to dismiss, which Dr. Trabucco describes as "perhaps the most important exhibit of all" and relies upon for admissions by Cogan, is a "full, true and accurate" transcript of the proceedings in open court as certified by the official court reporter's signature, and is a part of this court's official record.

¶26 Finally, we agree with Dr. Trabucco that Cogan makes no coherent argument in support of a finding of either abuse of discretion by the judge or prejudice to Cogan as a result of the court's apparent decision to overrule any authenticity objections and consider the subject exhibits. Nonetheless, because the plaintiff always bears the ultimate burden of persuasion to prove its claim and cannot simply rely on deficiencies in a defendant's response to a motion for summary judgment, *Wells Fargo Bank*, 231 Ariz. at 211, ¶ 1, we conduct our *de novo* review mindful of the requirement that Dr. Trabucco independently demonstrate with admissible evidence his entitlement to summary judgment as a matter of law.

### III. Malicious Prosecution

¶27 Cogan argues the superior court erred in granting Dr. Trabucco's motion for partial summary judgment as to malicious prosecution. To prove malicious prosecution, a plaintiff must show the defendant (1) instituted a proceeding, (2) motivated by malice, (3) without probable cause, (4) that terminated in the plaintiff's favor, and (5) damaged the plaintiff. *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 416-17 (1988); *Bird v. Rothman*, 128 Ariz. 599, 602 (App. 1981).

#### A. Malice

¶28 Cogan does not dispute that he instituted civil and adversary bankruptcy actions against Dr. Trabucco, but he argues the superior court erred in determining his actions were motivated by malice.

¶29 "The malice element in a civil malicious prosecution action does not require proof of intent to injure." *Bradshaw*, 157 Ariz. at 418 (citing Restatement (Second) of Torts ("Restatement") § 676 cmt. c (1977)). "Instead, a plaintiff must prove that the initiator of the action primarily

used the action for a purpose 'other than that of securing the proper adjudication of the claim.'" *Id.* (citations omitted).

¶30　　　Here, Cogan admitted his primary motivation in accusing Dr. Trabucco of willfully and maliciously killing his patient was to prevent Dr. Trabucco from obtaining a bankruptcy discharge. During oral argument before the superior court on an earlier motion to dismiss Cogan filed in this case, Cogan told the court why he made the allegations:

> Under bankruptcy law, negligence is a dischargeable matter of law. We were required to show willful, malicious injury which necessarily involves intentional conduct and kind of extreme and outrageous intentional conduct, and thus, the amended complaint was fashioned as such.
>
> . . . .
>
> I had to file this case under a willful and malicious injury under the bankruptcy code as negligence is dischargeable and therefore the amended complaint was fashioned as such, and we made those allegations.

Moreover, in his e-mails to Holden, Cogan admitted this was his primary motivation for the allegations, and even that he believed these allegations were "unfair" to Dr. Trabucco. Thus, Cogan's articulated purpose in filing the First Amended Complaint in bankruptcy court was not to secure the proper adjudication of the claim but rather a legal ploy designed solely to prevent the Scharfs' claim from being discharged in the bankruptcy proceedings.

¶31　　　Because Cogan admitted bringing the intentional tort claims for an improper purpose, the superior court did not err in finding Dr. Trabucco had shown the existence of the malice element of malicious prosecution.

### B.  Probable Cause

¶32　　　Cogan also argues the superior court erred in finding he lacked probable cause to bring the claims he alleged in the First Amended Complaint in bankruptcy court.

¶33　　　Probable cause is determined by the court as a question of law. *Bradshaw*, 157 Ariz. at 419. To meet a showing of probable cause, "[t]he initiator of the action must honestly *believe* in its possible merits; and, in

10

light of the facts, that *belief must be objectively reasonable*." *Id.* at 417 (citations omitted). Thus, although the initiator of the original action need not be certain he will prevail, he must *reasonably* believe in the possibility the court will find his claim valid. *Id.* at 417-18; *but see In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 845 F. Supp. 1377, 1384 (D. Ariz. 1993) (concluding that, "as long as the underlying lawsuit is not objectively baseless, the plaintiff cannot be held liable for bringing the suit even if the plaintiff's motives were malicious" (citing *Prof'l Real Estate v. Columbia Pictures Indus.*, 508 U.S. 49, 57 (1993))).

¶34　　　Probable cause does not exist "merely because at the time an action is filed there is some evidence that will withstand a motion for summary judgment." *Bradshaw*, 157 Ariz. at 417. "Such a rule . . . would be unwise because it would permit people to file actions they believed or even knew to be unfounded simply because they could produce a scintilla of evidence sufficient to withstand a motion for summary judgment." *Id.* Instead, the test is whether the initiator of the action "reasonably believes that he has a good chance of establishing his case to the satisfaction of the court or the jury." *Id.* (citation omitted).

¶35　　　On appeal, Cogan argues his probable cause to allege Dr. Trabucco maliciously and willfully killed his patient during surgery was that the patient, Gerald Scharf, "died only three days after what was to be a simple 2½ hour surgery [which] actually [took] approximately nine hours and where Dr. Trabucco said that the surgery went well." Also, in a previous e-mail, Cogan argued he had probable cause because Dr. Trabucco had "consent to open the [surgical] field and did not." However, before dismissal of the First Amended Complaint in the bankruptcy proceeding, Cogan had produced no witness, much less an expert, opining that this even constituted medical negligence, let alone any objective evidence to support the allegations of willful and malicious behavior.[7] Further, he has still not produced any evidence showing he had an objectively reasonable basis for claiming Dr. Trabucco willfully and maliciously killed his own

---

[7]　Cogan notes that, before the 2017 trial in federal district court, he produced two expert witnesses, including a causation expert, Dr. Donald Mellman, whose testimony might have supported a claim of negligence. Needless to say, such opinion evidence—even if admissible in a negligence case—falls far short of the heightened proof required to establish willful and malicious acts.

patient. Accordingly, as a matter of law, Cogan had no probable cause for these claims.[8]

### C. Termination of Proceedings in Dr. Trabucco's Favor

¶36            Cogan next argues the bankruptcy adversary proceedings were not terminated in Dr. Trabucco's favor because there was no trial, only a voluntary dismissal of the First Amended Complaint.

¶37            In general, the existence of a favorable termination is a question of law. *See Lane v. Terry H. Pillinger, P.C.*, 189 Ariz. 152, 155-56 (App. 1997). "Civil proceedings may be terminated in favor of the person against whom they are brought . . . by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them." *Frey v. Stoneman*, 150 Ariz. 106, 110 (1986) (quoting Restatement § 674 cmt. j). A voluntary dismissal with prejudice does not as a rule amount to a judgment on the merits. *Wetzler v. Howell*, 37 Ariz. 381, 385 (1930). When a termination or dismissal indicates the defendant is innocent of wrongdoing, it is a favorable termination; however, if it is merely procedural or technical, the dismissal is not a favorable adjudication on the merits. *Lane*, 189 Ariz. at 154 (citing *Frey*, 150 Ariz. at 110; W. Prosser & W. Keeton, Law of Torts § 119 at 874 (stating that, for a termination to be favorable, it must reflect on the merits and not be merely a procedural victory)). To make such a determination, the court must evaluate whether the dismissal substantively reflects on the merits, such that, if it had been pursued, it would surely have resulted in a decision in favor of the defendant. *Frey*, 150 Ariz. at 111 (citations omitted).

¶38            Here, there is no material dispute of fact about the circumstances under which Cogan's intentional tort claims were dismissed, and that the dismissal reflected substantively on the merits, such that, had the matter been pursued, it would have certainly resulted in a decision in favor of Dr. Trabucco. Dr. Trabucco's counsel, Holden, demanded in a series of e-mails and other written correspondence that Cogan stipulate to dismiss the claims of "malicious and willful" conduct in bankruptcy court because they were baseless, and to agree the remaining allegations for

---

[8]            Cogan also argues the bankruptcy adversary case was not "maintained" because it was ultimately dismissed voluntarily and with prejudice. This argument is a *non sequitur*, however, because maintenance of the offending lawsuit is not a necessary element of malicious prosecution.

negligence could be tried in a separate action in state or federal court. Cogan produced no evidence to support his intentional tort claims, and eventually agreed to dismiss those claims with prejudice, albeit with the stipulation that the Scharfs be allowed to refile a negligence action against Dr. Trabucco with approval from the bankruptcy court. Given that the intentional tort claims alleging malicious and willful conduct on the part of Dr. Trabucco were dismissed with prejudice, this outcome was clearly a favorable termination for Dr. Trabucco as to such claims. Accordingly, the superior court did not err in concluding that bankruptcy adversary proceedings were terminated in Dr. Trabucco's favor.

**¶39** On this record, the court's decision to grant partial summary judgment against Cogan on the claim of malicious prosecution was supported by the facts and law, and we affirm that ruling.

> *IV. Abuse of Process*

**¶40** Cogan also argues the superior court erred in granting Dr. Trabucco's motion and denying his cross-motion for partial summary judgment as to abuse of process.

**¶41** "The essential elements of the tort of abuse of process are an ulterior purpose and a wilful act in the use of judicial process not proper in the regular conduct of the proceeding." *Bird*, 128 Ariz. at 602 (citations omitted); *accord Nienstedt v. Wetzel*, 133 Ariz. 348, 353 (App. 1982) (requiring "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings").

**¶42** "Filing of a lawsuit is a 'regular' use of process, and therefore may not on its own fulfill the requirement of an abusive act, even if the decision to sue was influenced by a wrongful motive, purpose or intent." *Simon v. Navon*, 71 F.3d 9, 16 (1st Cir. 1995) (citations omitted); *accord Joseph v. Markovitz*, 27 Ariz. App. 122, 125 (1976) ("Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish."); *see also* Restatement § 682 cmt. a ("The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.").

**¶43** Cogan argues that the ulterior purpose element Dr. Trabucco appeared to primarily if not fully rely on for his abuse of process claim "is from the hiring of Mrs. Cardone," and he raises several arguments why the superior court should not have relied on the actions of Joanne Cardone in finding that he abused the legal process.[9]

**¶44** Rather than address these arguments on appeal, Dr. Trabucco instead argues the filing of the bankruptcy adversary claim alone sufficed to constitute abuse of process because through the claim, Cogan wrongfully attempted to prevent Dr. Trabucco's discharge from bankruptcy. However, as Cogan correctly notes, he did not seek or obtain the denial of Dr. Trabucco's discharge under 11 U.S.C. § 727; instead, Cogan's goal in filing the adversary complaint was to preserve an exception to the discharge, i.e., the non-dischargeability of a debt under 11 U.S.C. § 523(a)(6). More to the point, reliance on the filing of the claim alone improperly conflates the malicious prosecution claim with the abuse of process claim.

**¶45** Dr. Trabucco further argues that "even if there were some technical defect in characterizing Dr. Trabucco's claim as 'abuse of process' as opposed to [malicious prosecution], and in awarding summary judgment thereon, such error would be harmless under the circumstances, since both claims arose out of exactly the same facts; there is no meaningful distinction in the damages available for each; and the two torts are very closely related, to the point of often being confused for the same."[10] He then cites several cases for the proposition that malicious prosecution and abuse of process are often confused and closely related torts. Although we generally agree with that proposition, it does not serve to advance Dr. Trabucco's argument for affirming partial summary judgment on the abuse of process claim on any independent ground. Accordingly, on this record, we reverse summary judgment as to Dr. Trabucco's abuse of process claim and direct the superior court to enter judgment in favor of Cogan as to liability on the abuse of process claim only.

---

[9] We note that Cogan did not object to this evidence at trial, notwithstanding Dr. Trabucco's abandonment of the negligent hiring/supervision/retention claim (as well as the intentional infliction of emotional distress claim).

[10] At oral argument on appeal, counsel for Dr. Trabucco suggested the two torts might be combined into what counsel characterized as an "übertort" of wrongful use of litigation. We decline counsel's suggestion to combine the two torts in this fashion.

**¶46** Additionally, we disagree with Dr. Trabucco's argument that the claims of malicious prosecution and abuse of process (and the damages associated with each) arise out of exactly the same facts.[11]  Although many of the facts underlying each tort may be the same, each individual tort relies on separate facts for its basis.  Moreover, those separate facts provide not only the basis for an independent cause of action, but also an independent basis for damages, which obviously may vary greatly based on the jury's view of the actions associated with each tort.  Neither the trial on damages, nor the jury's verdict, nor the resulting judgment identified or distinguished between the damages associated with each tort; after carefully reviewing the entire record of the proceedings and trial presented to us, we cannot, either.[12]  Accordingly, the jury's verdict with respect to Cogan must be vacated[13] and the matter remanded for a new trial as to the damages, if any, arising out of Cogan's malicious prosecution of Dr. Trabucco in bankruptcy court.[14]

---

[11] Although both claims as alleged by Dr. Trabucco had their genesis in the filing of the First Amended Complaint (with its allegations of an intentional tort) in bankruptcy court, Dr. Trabucco largely relied at trial on the individual actions of Joanne Cardone—most of which occurred before Cogan ever hired her—to argue that he had been damaged, ostensibly by an abuse of process.

[12] The transcript of the first day of trial—including jury selection, preliminary instructions, and counsels' opening statements—and the transcript of counsels' closing statements were not produced for our review on appeal.  However, Cogan's failure to include those portions of the trial transcripts is not fatal in this instance, given the clear error injected into this case and also given Dr. Trabucco's continuing insistence that the two torts—and the damages associated with them—are the same.

[13] Dr. Trabucco did not cross-appeal from the judgment in favor of the Scharfs.  Accordingly, that portion of the judgment remains and is final.

[14] The superior court retains the role of gatekeeper of the evidence, *see generally State v. Damper*, 223 Ariz. 572, 577, ¶ 20 (App. 2010), and at trial on remand, the jury should be presented only with evidence related to the malicious prosecution damages.  Subject to proper objection, evidence of Joanne Cardone's unauthorized activities and other evidence that relates only to the claims of abuse of process, intentional infliction of emotional distress, or negligent hiring/supervision/retention should not be admitted.

*V.    Dr. Trabucco's Supplemental Filing*

**¶47**        Cogan also argues the superior court erred in allowing Dr. Trabucco to supplement his motion for partial summary judgment with evidence of the trial proceedings in federal district court.

**¶48**        The issue here is whether the superior court could consider the fact that a federal court jury returned a defense verdict in favor of Dr. Trabucco on the Scharfs' wrongful death negligence allegations, not whether any jury in this case should be advised of that fact, which would likely require an analysis under Rule 403, Ariz. R. Evid.

**¶49**        It was within the discretion of the trial judge to take judicial notice of the proceedings in the federal district court matter, including the verdict. *See* Ariz. R. Evid. 201 (allowing courts to take judicial notice of facts that are not the subject of reasonable dispute); *Muscat*, 244 Ariz. at 196, ¶ 5 n.2. But even assuming any error, there is no indication that such error had any obvious effect. Cogan did not object to the supplement, fails to argue on appeal that he could not have responded to it, and does not argue, much less show, that he was prejudiced by it. The court referenced the supplement in its minute entry granting partial summary judgment, but the record is not clear as to what extent the court may have relied on it. Finally, the evidence before the superior court was more than sufficient to support the court's finding of liability as to malicious prosecution without the supplement.

*VI.    Costs on Appeal*

**¶50**        Dr. Trabucco requests his costs on appeal, pursuant to A.R.S. §§ 12-341 and 12-342. Because neither side has been entirely successful on appeal, we decline to award costs to either party.

## CONCLUSION

**¶51**        For the foregoing reasons, we affirm the finding of liability for malicious prosecution, reverse the finding of liability for abuse of process, vacate the judgment with regard to the damages awarded against Cogan, affirm the judgment with regard to the Scharfs, and remand with directions for the superior court to enter judgment in favor of Cogan as to liability on the abuse of process claim only and, as consistent with this decision, for a new trial on the issue of damages arising out of Cogan's malicious prosecution of Dr. Trabucco in the bankruptcy proceedings.



AMY M. WOOD • Clerk of the Court
FILED:  AA